UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
NORTEK INC.,

                Plaintiff,

   -against-

ITT LLC,

               Defendant.

------------------------------------- X

Civil Action No.: 7:21-3999

## COMPLAINT

Plaintiff Nortek Inc. ("Nortek"), by its attorneys, Troutman Pepper Hamilton Sanders LLP, as and for its Complaint against Defendant ITT LLC ("ITT"), alleges as follows:

## NATURE OF THE ACTION

1. This case arises from ITT's failure to honor its clear and unambiguous contractual indemnification obligations to Nortek relating to certain asbestos-related claims asserted against Nortek. Despite Nortek's tender of numerous covered asbestos litigation matters to ITT for indemnification, ITT has failed and refused to indemnify Nortek for these matters, thus materially and repeatedly breaching its contractual obligations to Nortek. As a result of ITT's material breach, Nortek is entitled to recover all amounts incurred by Nortek in connection with these covered asbestos litigation matters, together with interest, as well as Nortek's attorneys' fees and costs incurred in pursuing this lawsuit. Nortek also is entitled to a decree of specific performance against ITT requiring it to honor its contractual indemnification obligations going forward. In the alternative, Nortek is entitled to implied (common law) indemnification from ITT for all amounts it has incurred in connection with these covered asbestos litigation matters,

which arose from the alleged carelessness, negligence, intentional acts and/or breach of common law and/or statutory duties of ITT and not through any fault, negligence, or breach of any obligation on the part of Nortek.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Nortek is a Delaware corporation with its principal place of business in Atlanta, Georgia. Nortek is a manufacturer and distributor of building products for residential and commercial applications.

3. Defendant ITT is a limited liability company with its principal place of business located at 1133 Westchester Avenue, White Plains, New York 10604.

4. For the purposes of diversity jurisdiction, a limited liability company "takes the citizenship of each of its members." *Bayerische Landesbank v. Aladdin Cap. Mgmt.*, 692 F.3d 42, 49 (2nd Cir. 2012). ITT's sole member is ITT, Inc., an Indiana corporation with its principal place of business located at 1133 Westchester Avenue, White Plains, New York 10604.

5. This Court possesses subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1). This is a dispute between Nortek (a citizen of Delaware and Georgia) and ITT (a citizen of Indiana and New York), and the amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

6. ITT is subject to the personal jurisdiction and venue of this Court pursuant to 28 U.S.C. § 1391. ITT may be served with process upon its registered agent, CT Corporation System, 28 Liberty St., New York, New York 10005.

## FACTS

7. On or about June 28, 1985, ITT Corporation, ITT Industries of Canada, Ltd., National Temperature Control Centers, Inc., and ITT Industries Limited, on the one hand

(together, the "Seller"), and FL Industries, Inc. (the "Buyer" or "FL"), on the other hand, entered into an Asset Purchase Agreement to convey certain assets from the Seller to the Buyer (the "APA"). A true and correct copy of the APA is attached hereto as **Exhibit A**.

8. Among other things, the Buyer acquired specified assets of the "Reznor Business," which the APA defined as "the business conducted or currently proposed by Seller to be conducted by Seller's Reznor division, but excluding the business conducted by the Reznor Europe division of ITT Industries Belgium S.A." APA § 1.4(h). Seller's Reznor business included, among other things, the production of heaters and other products alleged to contain asbestos.

9. Pursuant to the APA, the Buyer assumed certain obligations and liabilities of the Seller, including "Seller's obligations with respect to bodily injury or property damage arising out of (x) products which were manufactured by Seller prior to the Closing [June 29, 1985] (including products manufactured by Seller prior to the Closing and sold by Buyer after the Closing), or, in the case of products not manufactured by Seller but purchased from others for resale, products which were sold by Seller prior to the Closing or which are included in the inventories which are included in the Assets, and (y) services which were provided by Seller prior to the Closing, *but only to the extent that any injury, incident, accident or other event giving rise to any such obligation occurs after the Closing* . . . ." APA § 1.3(a)(vii) (emphasis added). The APA states that the Buyer assumed the obligations and liabilities of Seller expressly listed, "but only those and no others." *Id.* at § 1.3(a).

10. The APA further provides that beginning on June 29, 1985, the "Seller shall indemnify and hold harmless Buyer, its affiliates, their respective officers and directors, employees, agents and representatives and any person claiming by or through any of them from

and against any and all Losses arising out of or resulting from: . . . (iv) any failure by Seller, after the Closing, to pay, perform and discharge all of its obligations and liabilities, fixed or contingent, and whether arising or to be performed prior to, on or after the Closing, relating to any of the Businesses and not expressly assumed by Buyer in Section 1.3(a), 7.11 or 8 hereof . . . ." APA § 13.2(a). The APA defines "Businesses" to include the "Reznor Business." *Id.* at § 1.4.

11. The APA's indemnification provision also states that "[p]romptly after receipt by an Indemnitee of written notice of the assertion or the commencement of any Litigation with respect to any matter referred to in Section 13.2 or 13.3 hereof, the Indemnitee shall give written notice thereof (the 'Notice') to the person from whom indemnification is sought pursuant hereto (the 'Indemnitor') and shall thereafter keep the Indemnitor reasonably informed with respect thereto, provided that failure of the Indemnitee to give the Indemnitor prompt notice as provided herein shall not relieve the Indemnitor of its obligations hereunder." APA § 13.4(a). The APA defines "Litigation" as each and all of the following items: "claim, action, suit, proceeding, arbitration, investigation, hearing, or notice of hearing." *Id.* at § 4.9.

12. The indemnification provision also provides that "[i]n case any such Litigation is brought against the Indemnitee, the Indemnitor shall be entitled to assume the defense thereof, by written notice to the Indemnitee within 30 days after receipt of the Notice of its intention to do so, with counsel reasonably satisfactory to the Indemnitee at the Indemnitor's own expense." APA § 13.4(a).

13. The provision continues that "[i]f the Indemnitor shall fail to notify the Indemnitee of its desire to assume the defense of any such Litigation within the prescribed period of time, or shall notify the Indemnitee that it will not assume the defense of any such Litigation,

then the Indemnitee shall assume the defense of any such Litigation, in which event it may do so in such manner as it may deem appropriate . . . ." APA § 13.4(b).

14. The indemnification provision also provides that "[a]mounts payable by the Indemnitor to the Indemnitee in respect of any Losses under Section 13.2 or 13.3 hereof, as the case may be, shall . . . be payable by the Indemnitor as incurred by the Indemnitee." APA § 13.4(c). The APA defines "Losses" as "each and all of the following items, namely, claims, losses, liabilities, damages, fines, penalties, costs and expenses (including, without limitation, interest which may be imposed in connection therewith, expenses of investigation, reasonable fees and disbursements of counsel and other experts, and the cost to the person seeking indemnification (the 'Indemnitee') of any funds expended by reason of the occurrence of any of the events enumerated in clauses (a) through (e) of Section 13.2 hereof . . . )." APA § 13.1.

15. Pursuant to the APA, "Seller acknowledges that Buyer will be irreparably harmed and Buyer will have no adequate remedy at law if Seller fails to perform any of its obligations under this Agreement. It is accordingly agreed that, in addition to any other remedies which may be available, Buyer shall have the right to obtain injunctive relief to restrain a breach or threatened breach of, or otherwise obtain specific performance of, Seller's covenants and other agreements contained in this Agreement." APA § 16.3.

16. In January 1992, Thomas & Betts Holdings, Inc. ("T&B") acquired FL.

17. On or about June 4, 1993, T&B and the Seller entered into an Addendum relating to the APA (the "Addendum" and, collectively with the APA, the "Agreement"). A true and correct copy of the Addendum is attached hereto as **Exhibit B**.

18. T&B and the Seller entered into the Addendum for the purposes of "clarify[ing] the allocation, under the Agreement, of such rights, liabilities, and responsibilities arising out of the manufacture and sale of products of Seller." Addendum at 1.

19. The Addendum states that "Seller agrees that under the Agreement, T&B is not responsible for asbestos-related claims or asbestos-related litigation arising out of products manufactured by Seller or its predecessors prior to the date of closing of the Agreement [June 29, 1985]. Seller shall be responsible to retain counsel, to defend at its sole expense, and to pay any judgment rendered against Seller, T&B, or both, in all actions, whether currently pending or commenced in the future, alleging liability of Seller, T&B, or both, arising out of exposure to asbestos incorporated in products manufactured by Seller or its predecessors prior to or on the date of closing of the Agreement, that is, June 29, 1985." Addendum § D.

20. The Addendum further provides that it "constitutes an amendment to the Agreement," Addendum § I, and that "[t]his Addendum, including without limitation all undertakings and obligations contemplated by it, shall be binding on and inure to the benefit of the parties and their respective successors, assigns, personal representatives or beneficiaries of any kind, executors, and administrators, as the case may be," *id.* at § H.

21. After the execution of the Addendum, T&B merged into Thomas & Betts Corporation.

22. In April 2014, Nortek acquired the Reznor Business from Thomas & Betts Corporation. Nortek is a successor to T&B as it relates to the Reznor Business, and the Agreement is binding upon and inures to the benefit of Nortek as it relates to that business. APA § 16.8; Addendum § I.

23. ITT is the successor to ITT Corporation. The Agreement is binding upon and inures to the benefit of ITT. APA § 16.8; Addendum § I.

24. Since the execution of the Agreement, numerous asbestos-related claims arising out of products manufactured by Seller or its predecessors prior to the date of closing of the Agreement have been asserted against Buyer or its successors, including T&B and Nortek. For several years after the execution of the Agreement, Seller honored its contractual obligations and indemnified Buyer or T&B against such claims. Eventually, however, Seller ceased providing indemnification as required by the Agreement.

25. Nortek has provided notice to ITT of the asbestos-related claims asserted against Nortek in the litigation matters identified in **Exhibit C** attached hereto (the "Covered Claims"), but ITT has failed and refused to indemnify Nortek against these Covered Claims as required by the Agreement. ITT is well aware of the Covered Claims, as ITT itself is separately named as a defendant in many of the Covered Claims.

26. Pursuant to the Agreement, Nortek is not responsible for defending against or for any judgment rendered against it with respect to the Covered Claims and any future such claims because they constitute "asbestos-related claims or asbestos-related litigation arising out of products manufactured by Seller or its predecessors prior to the date of closing of the Agreement," for which "Seller agrees that under the Agreement, [Nortek] is not responsible." Addendum § D.

27. Pursuant to the Agreement, ITT is "responsible to retain counsel, to defend at its sole expense, and to pay any judgment rendered against Seller, [Nortek], or both" in these Covered Claims and any future such claims, because they are "actions, whether currently pending or commenced in the future, alleging liability of Seller, [Nortek], or both, arising out of

-7-

exposure to asbestos incorporated in products manufactured by Seller or its predecessors prior to or on the date of closing of the Agreement, that is, June 29, 1985." Addendum § D.

28.     Despite Nortek's tender of the Covered Claims to ITT, ITT has failed to retain counsel, defend at its sole expense, and pay any judgment rendered against Seller, [Nortek], or both as required by the terms of the Agreement.

29.     ITT also is obligated under the Agreement to "indemnify and hold harmless" Nortek "from and against any and all Losses arising out of or resulting from: . . . (iv) any failure by Seller, after the Closing, to pay, perform and discharge all of its obligations and liabilities, fixed or contingent, and whether arising or to be performed prior to, on or after the Closing, relating to any of the Businesses and not expressly assumed by Buyer in Section 1.3(a), 7.11 or 8 hereof . . . ," APA § 13.2(a), which includes all asbestos-related claims or asbestos-related litigation arising out of products manufactured by Seller or its predecessors prior to or on June 29, 1985, Addendum § D.

30.     The Agreement requires ITT to pay Nortek for Losses "as incurred by the Indemnitee," APA § 13.4(c), which includes all "claims, losses, liabilities, damages, fines, penalties, costs and expenses (including, without limitation, interest which may be imposed in connection therewith, expenses of investigation, reasonable fees and disbursements of counsel and other experts, and the cost to [Nortek] of any funds expended by reason of the occurrence of any of the events enumerated in clauses (a) through (e) of Section 13.2 hereof . . . )," APA § 13.1.

31.     Despite Nortek's written notice of the Covered Claims to ITT, ITT has failed to comply with its clear and unambiguous contractual obligations to Nortek. As a result, Nortek has incurred significant Losses in defending against the Covered Claims and in seeking

indemnification from ITT, including, but not limited to, Nortek's attorneys' fees and costs incurred in defending against the Covered Claims and prosecuting this action.

**FIRST CAUSE OF ACTION**
(Breach of Contract)

32. Nortek repeats and realleges each and every allegation contained in paragraphs 1 through 31 above as if fully set forth herein.

33. Nortek has performed its obligations under the Agreement and has satisfied all requirements necessary to bring this action, or such obligations and requirements have been excused.

34. ITT's failure and refusal to retain counsel, to defend at its sole expense, and to pay any judgment rendered against Nortek relating to the Covered Claims constitutes a breach of the Agreement.

35. In addition, ITT's failure and refusal to indemnify and hold harmless Nortek for its Losses incurred in defending against the Covered Claims and seeking indemnification from ITT, as such Losses are incurred, also constitutes a breach of the Agreement.

36. ITT's breach of contract has caused Nortek substantial damages, in an amount to be determined at trial, but in no event less than $3 million, plus interest and attorneys' fees as authorized by the Agreement.

**SECOND CAUSE OF ACTION**
(Specific Performance)

37. Nortek repeats and realleges each and every allegation contained in paragraphs 1 through 36 above as if fully set forth herein.

38. Nortek has performed its obligations under the Agreement and has satisfied all requirements necessary to bring this action, or such obligations and requirements have been

excused. Nortek is ready, willing, and able to perform any remaining obligations of Nortek under the Agreement, to the extent any such obligations exist.

39. Despite the Agreement's plain and unambiguous language providing that Nortek is not responsible for asbestos-related claims or asbestos-related litigation arising out of products manufactured by ITT or its predecessors prior to or on June 29, 1985 and that ITT is responsible for retaining counsel, defending at its sole expense, and paying any judgment rendered against Nortek and holding Nortek harmless in connection with asbestos-related litigation, ITT has failed and refused to comply with these clear contractual obligations with respect to the Covered Claims.

40. ITT is fully capable of complying with its contractual obligations with respect to the Covered Claims and any future such asbestos-related litigation. Among other things, ITT itself is named as a defendant in many of the Covered Claims and has retained counsel to defend itself and, upon information and belief, has insurance coverage for such claims.

41. In the Agreement, ITT agreed that Nortek "will be irreparably harmed and Buyer will have no adequate remedy at law if Seller fails to perform any of its obligations under this Agreement." APA § 16.3. ITT further "agreed that, in addition to any other remedies which may be available, Buyer shall have the right to obtain injunctive relief to restrain a breach or threatened breach of, or otherwise obtain specific performance of, Seller's covenants and other agreements contained in this Agreement." *Id.*

42. ITT continues to fail and refuse to perform its obligations under the Agreement. As a result, Nortek is entitled to a decree of specific performance compelling ITT to perform its obligations under the Agreement, including its obligation to retain counsel to defend Nortek at

ITT's sole expense and to pay any judgment rendered against Nortek with respect to the Covered Claims and any future such asbestos-related litigation.

### THIRD CAUSE OF ACTION
(In the Alternative, Implied [Common Law] Indemnification)

43. Nortek repeats and realleges each and every allegation contained in paragraphs 1 through 42 above as if fully set forth herein.

44. The Covered Claims were the direct and proximate result of the alleged carelessness, negligence, intentional acts and/or breach of common law and/or statutory duties of ITT in the production, assembly, manufacture, and/or furnishing of the products underlying the Covered Claims, and not through any fault, negligence, or breach of any obligation on the part of Nortek.

45. If the indemnification obligations set forth in the Agreement are deemed invalid or unenforceable for any reason, or if those indemnification obligations are found to be inapplicable to the Covered Claims, Nortek is entitled to implied (common law) indemnification from ITT for the amounts it has expended in defending against the Covered Claims.

46. ITT's failure to indemnify Nortek has caused Nortek substantial damages, in an amount to be proven at trial, but in no event less than $3 million, plus interest.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nortek Inc. respectfully requests that the Court enter judgment in its favor against Defendant as follows:

A. On the First Cause of Action, money damages in an amount to be proven at trial, but believed to be no less than $3 million, plus interest and attorneys' fees as authorized by the Agreement;

B. On the Second Cause of Action, a decree of specific performance compelling ITT to perform its obligations under the Agreement, including its obligation to retain counsel to defend Nortek at ITT's sole expense and to pay any judgment rendered against Nortek with respect to the Covered Claims and any future such asbestos-related litigation;

C. On the Third Cause of Action, money damages in an amount to be proven at trial, but believed to be no less than $3 million, plus interest;

D. That all attorneys' fees and costs incurred by Nortek be assessed against ITT;

E. That the Court award such other and further relief as shall appear just and proper.

Dated: May 5, 2021
New York, New York

**TROUTMAN PEPPER
HAMILTON SANDERS LLP**

By: *s/ Matthew J. Aaronson*
Matthew J. Aaronson
875 Third Avenue
New York, NY 10022
T: 212.704.6000
matthew.aaronson@troutman.com

Of counsel:
Thomas E. Reilly (*pro hac vice to be submitted*)
Georgia Bar No. 600195
W. Alex Smith (*pro hac vice to be submitted*)
Georgia Bar No. 532647
Bank of America Plaza
600 Peachtree Street, Suite 3000
Atlanta, Georgia 30308-2216
T: (404) 885-3000
tom.reilly@troutman.com
alex.smith@troutman.com

*Counsel for Plaintiff Nortek Inc.*