UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NORTEK INC.,

                Plaintiff,

-against-

ITT LLC,

                Defendant.

**OPINION AND ORDER**

21-CV-03999 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Plaintiff Nortek Inc. ("Nortek" or "Plaintiff") commenced this action on May 5, 2021, alleging that it is entitled to indemnification by Defendant ITT LLC ("ITT" or "Defendant") for certain asbestos-related claims. (Doc. 1). This action was administratively closed in March 2022 while the parties proceeded to arbitration (Dc. 21) and was re-opened in August 2022 following the indeterminate conclusion of the arbitration proceedings (Doc. 40). Plaintiff filed an Amended Complaint on November 30, 2022, asserting claims for: (i) breach of contract; (ii) specific performance/declaratory/injunctive relief; and (iii) in the alternative, implied (common law) indemnification. (Doc. 48, "Am. Compl."). Defendant filed its answer on December 14, 2022 (Doc. 50), and the parties thereafter engaged in discovery, which was extended multiple times, pursuant to a Civil Case Discovery Plan and Scheduling Order (Doc. 67; Doc. 71; Doc. 74).

      On January 31, 2024, the Court granted the parties leave to move for summary judgment. (Doc. 101). On February 29, 2024, in accordance with the briefing schedule set by the Court, Defendant served its motion for summary judgment. (Doc. 109; Doc. 110, "Def. Br."; Doc. 111; Doc. 112; Doc. 117). Plaintiff served its combined opposition to Defendant's motion for summary judgment and cross-motion for partial summary judgment on April 12, 2024. (Doc. 113; Doc. 114, "Pl. Br."; Doc. 115, "Jacobson Decl."; Doc. 116). On May 13, 2024, Defendant served its

combined reply in support of its motion for summary judgment and opposition to Plaintiff's cross-motion for partial summary judgment. (Doc. 118, "Kim Decl."; Doc. 119, "Def. Reply"). Plaintiff served, with permission of the Court, its reply brief in support of its cross-motion for partial summary judgment and in opposition to Defendant's motion for summary judgment on June 5, 2024. (Doc. 108; Doc. 120, "Pl. Reply"). The motion was fully submitted on June 5, 2024.

For the reasons set forth below, Defendant's motion is GRANTED IN PART and DENIED IN PART, and Plaintiff's cross-motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motions for summary judgment and draws them from the pleadings, the parties' Joint Rule 56.1 Statement of Material Facts (Doc. 111, "SOMF"), and the admissible evidence proffered by the parties. Unless otherwise indicated, the following facts are undisputed.

In 1963, ITT, a multi-industrial manufacturer, acquired a product line of unit heaters for domestic and industrial applications under the "Reznor" name, which it continued to sell over the next two decades. (SOMF ¶¶ 2-3). Pursuant to an Asset Purchase Agreement dated June 28, 1985 (the "1985 APA"), ITT Corporation,[1] ITT Industries of Canada, Ltd., National Temperature Control Centers, Inc., and ITT Industries Limited sold a series of assets, including its "Reznor Business"—which by then produced, designed, manufactured, and marketed industrial heaters—to FL Industries. (*Id*. ¶¶ 4, 8). The 1985 APA contained an indemnification provision, discussed in detail *infra*, whereby ITT agreed to indemnify FL Industries for "Losses" related to the Reznor Business. (*Id*. ¶¶ 10, 12).

---

[1] Defendant ITT is successor by merger to ITT Corporation. (SOMF ¶ 6).

In January 1992, Thomas & Betts Holdings, Inc. ("T&B Inc.") acquired FL Industries and "succeeded to the rights of FL Indust[ries] under the [1985] APA[.]" (*Id*. ¶ 26). On June 4, 1993, ITT and T&B Inc. entered into a Products Liability Addendum (the "1993 Addendum"), discussed in detail *infra*, which resolved outstanding disputes between them concerning asbestos liabilities created by the sale of the Reznor products. (*Id*. ¶ 27). Thereafter, T&B Inc. merged into Thomas & Betts Corporation ("T&B Corp."). (*Id*. ¶ 41; Jacobson Decl., Exs. B, C, D).[2] ITT initially accepted tenders from and indemnified T&B Corp. for asbestos cases related to the Reznor products but at "some point" began to "push back on the tenders." (SOMF ¶¶ 37, 39).

On March 21, 2014, T&B Corp., along with other Thomas & Betts entities, executed a Purchase and Sale Agreement with Nortek (the "2014 PSA") wherein Nortek purchased T&B Corp.'s business of "designing, manufacturing, marketing, selling and distributing unit heaters, radiant heaters, air handling units, makeup air units and related replacement parts for the commercial heating, ventilation and air conditioning equipment market." (*Id*. ¶¶ 42-43). Nortek maintains that this business it purchased from T&B Corp. in 2014 is the same Reznor business that ITT sold to FL Industries in 1985. (*Id*. ¶ 44). The sale under the 2014 PSA was effectuated pursuant to a U.S. Contribution Agreement dated April 30, 2014 between T&B Corp. and Reznor LLC[3] (the "U.S. Contribution Agreement"). (*Id*. ¶¶ 45, 46, 49). T&B Corp., in effect, transferred certain assets and liabilities to Reznor LLC because T&B Corp. continued to remain in business after the 2014 transaction. The assets and liabilities which T&B Corp. contributed were, *inter* alia, the

---

[2] ITT argued in its opening brief that Nortek had failed to establish that T&B Inc. and T&B Corp. merged with one another. (Def. Br. at 16-17; SOMF ¶ 41). Nortek produced the certificates of merger and ITT did not respond to that evidence presented in Nortek's opening brief which clearly demonstrates that the merger occurred. (Pl. Br. at 13; Jacobson Decl., Exs. B, C, D; *see generally* Def. Reply). Therefore, ITT has abandoned its argument; and in any event Nortek has by admissible evidence established the fact of the merger.

[3] Reznor LLC was previously named Reznor Manufacturing Company, LLC. (SOMF ¶ 48).

assumed liabilities (including the indemnities) of the Reznor business. After execution of the 2014 PSA, Nortek defended claims relating to alleged asbestos exposure involving Reznor Manufacturing Company LLC. (*Id*. ¶¶ 75-77). Nortek now seeks as damages the amounts it has expended defending and resolving 337 asbestos-related claims for which ITT allegedly owes it indemnity. (*Id*. ¶¶ 96-100, 104-106).

This litigation followed.

## **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[4] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. *Porter v. Dartmouth-Hitchcock Medical Center*, No. 92 F.4th 129, 147 (2d Cir. 2024) ("[T]he court may not make credibility determinations or weigh the evidence." (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010))). The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Further, "while the court is required to review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Porter*, 92 F.4th at 147 (quoting *Kaytor*, 609 F.3d at 545). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a

reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

Defendant's motion for summary judgment seeks dismissal of the Amended Complaint in its entirety on the basis that Defendant is not liable for any of Plaintiff's claims. (Doc. 109). Plaintiff's cross-motion for partial summary judgment seeks a finding of Defendant's liability as to the First and Third Claims for Relief, with the amount of damages to be determined at trial, as well as the injunctive and declaratory relief sought in the Second Claim for Relief. (Doc. 113). Accordingly, the Court's analysis on this motion pertains to liability only and not damages.

I. First Claim for Relief: Breach of Contract

Nortek's First Claim for Relief alleges breach of contract based on ITT's alleged failure and refusal to honor its contractual obligation to indemnify Nortek against certain asbestos-related

6

liabilities—specifically, the Covered Claims[5]—as required by the 1985 APA and the 1993 Addendum. (Am. Compl. ¶¶ 3-4, 46-50). Given that the parties agree that Nortek does not have a direct contractual relationship with ITT (SOMF ¶ 95), Nortek's entitlement to contractual indemnification is based on its status as a successor to FL Industries or an assignee to T&B Corp.'s indemnity rights. (Pl. Br. at 18; Def. Br. at 15).

Article 13 of the 1985 APA contains an indemnification provision stating that ITT:

> shall indemnify and hold harmless [FL Industries], its affiliates, their respective officers and directors, employees, agents and representatives and any person claiming by or through any of them from and against any and all Losses arising out of or resulting from: . . . (iv) any failure by [ITT], after the Closing, to pay, perform and discharge all of its obligations and liabilities, fixed or contingent, and whether arising or to be performed prior to, on or after the Closing, relating to any of the Businesses and not expressly assumed by [FL Industries] in Section 1.3(a), 7.11 or 8 hereof . . . .

(SOMF ¶¶ 4, 10; *see also* 1985 APA Recitals). The term "Businesses" in Article 13 includes the "Reznor Business." (*Id*. ¶ 11). Further, Article 16.8 of the 1985 APA provided that it would "inure to the benefit of and shall be binding on the parties hereto and their respective heirs, legal representatives, successors and assigns; provided that neither this Agreement nor any of the rights hereunder may be assigned by any of the parties hereto without the consent of the other parties[.]" (*Id*. ¶ 19). Accordingly, pursuant to the 1985 APA, ITT's indemnity obligations would inure to the benefit of (i) successors and (ii) assigns with consent.

Following T&B Inc.'s acquisition of FL Industries, ITT and T&B Inc. entered into the 1993 Addendum which resolved outstanding indemnity disputes concerning asbestos liabilities. (*Id*. ¶¶ 26-27). Section D of the 1993 Addendum provided:

---

[5] The term "Covered Claims" refers to those claims identified in Exhibit F to the Amended Complaint. (Am. Compl. ¶ 39; *id*., Ex. F).

7

> [ITT Sellers] agree[] that under the [1985 APA], T&B is not responsible for asbestos-related claims or asbestos-related litigation arising out of products manufactured by [ITT Sellers] or [their] predecessors prior to the date of closing of the [1985 APA]. [ITT Sellers] shall be responsible to retain counsel, to defend at its sole expense, and to pay any judgment rendered against [ITT Sellers], T&B, or both, in all actions, whether currently pending or commenced in the future, alleging liability of [ITT Sellers], T&B, or both, arising out of exposure to asbestos incorporated in products manufactured by [ITT Sellers] or [their] predecessors prior to or on the date of closing of the [1985 APA], that is, June 29, 1985.

(*Id*. ¶ 31). Section G of the 1993 Addendum stated that "[a]ll terms and conditions of the [1985 APA] shall remain in full force and effect except to the extent explicitly modified herein or irreconcilably in conflict with this Addendum, in which case this Addendum shall control." (*Id*. ¶ 32). Section H of the 1993 Addendum further provided that "[t]his Addendum, including without limitation all undertakings and obligations contemplated by it, shall be binding on and inure to the benefit of the parties and their respective successors, assigns, personal representatives or beneficiaries of any kind, executors, and administrators, as the case may be." (*Id*.). Accordingly, pursuant to the 1993 Addendum, ITT's indemnity obligations would inure to the benefit of (i) successors and (ii) assigns.

Here, Nortek argues that it is entitled to indemnity as a successor to FL Industries and, alternatively, as an assignee of T&B Corp.'s indemnification rights. (Pl. Br. at 6-7). ITT disputes that Nortek is a successor of FL Industries and argues that even if Nortek were an assignee of T&B Corp., Nortek did not obtain the required consent for assignment of its indemnification rights. (Def. Reply at 5, 9-10.) The Court considers the arguments regarding Nortek's rights as a successor and assignee *seriatim*.

a. Successor

As discussed *supra*, ITT's indemnification obligations under both the 1985 APA and 1993 Addendum run to successors without any exceptions or conditions. Accordingly, if Nortek is a successor to FL Industries, Nortek has a contractual right to indemnification under both the 1985 APA and the 1993 Addendum. Here, there is no dispute that T&B Corp., following its merger with T&B Inc., is a successor to FL Industries. ITT challenges only the last link in the chain: whether Nortek is a successor to T&B Corp. (Pl. Br. at 18-20; Def. Br. at 16-17; Def. Reply at 9-10).

Under New York law,[6] "the word successor applies to one who takes over the obligations or rights of another." *ETF Int'l Assocs., Inc. v. Am. Stock Exch. LLC*, 87 A.D.3d 464, 464 (1st Dep't 2011). Specifically, according to Black's Law Dictionary, a corporate successor is "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." *Fleet Nat'l Bank v. Impol Seval Aluminum Rolling Mill Inc.*, 192 A.D.3d 628, 631 (1st Dep't 2021) (citing Black's Law Dictionary 1732 [11th ed 2019]); *see also Leveraged Innovations, LLC v. Nasdaq OMX Grp., Inc.*, No. 11-CV-03203, 2012 WL 1506524, at *5 (S.D.N.Y. Apr. 20, 2012) (citing same definition from Black's Law Dictionary); *Gismondi, Paglia, Sherling, M.D., P.C. v. Franco*, 206 F. Supp. 2d 597, 600 (S.D.N.Y. 2002) (same).

Here, Nortek and T&B Corp. entered into the 2014 PSA for the express purpose of the purchase and sale of T&B Corp.'s "Business"—defined as the "business of designing, manufacturing, marketing, selling and distributing unit heaters, radiant heaters, air handling units, makeup air units and related replacement parts for the commercial heating, ventilation and air conditioning equipment market." (SOMF ¶¶ 42-43, 50). ITT argues that Nortek failed to prove

---

[6] New York law controls. (SOMF ¶ 5; 1985 APA § 16.15; 2014 PSA § 12.11).

9

that the business T&B Corp. sold under the 2014 PSA was the same Reznor business that was sold to FL Industries in the 1985 APA. (*Id*. ¶ 44; Def. Reply at 9 n.5, 11 n.8). ITT does not, however, identify any evidence in the record contradicting the testimonial and other evidence cited by Nortek. (SOMF ¶ 44).

The Reznor business, a "division" of ITT that produced, designed, manufactured, and marketed industrial heaters, was operated by T&B Inc. as of the 1993 Addendum. (*Id*. ¶ 8; Kim Decl., Ex. 3 "Johnson Tr." at 53:7-54:9). Following T&B Inc.'s merger into T&B Corp. (SOMF ¶ 41) and after the execution of the 2014 PSA, Nortek acquired "the heating, ventilation and air conditioning (HVAC) business of [T&B Corp.]" (*Id*. ¶ 67). The documentary evidence supports that the HVAC business that T&B Corp. transferred in 2014 was the Reznor business. Specifically, the 2014 PSA was based on a contribution of certain assets to a "U.S. Company" named "*Reznor Manufacturing Company, LLC*." (*Id*. ¶¶ 45-46) (emphasis added). The 2014 PSA also explicitly disclosed asbestos liabilities "which target *Reznor* or a *Reznor* product." (*Id*. ¶ 66) (emphasis added). Moreover, Robert Bentz, Risk Manager for Nortek, testified that based on the corporate history, he believes that the business Nortek acquired from T&B Corp. in 2014 "was the same business" that ITT sold to FL Industries in 1985. (Kim Decl., Ex. 1 "Bentz Tr. Day 1" at 43:4-5, 108:8-110:23). Likewise, when asked whether there were differences between the business that Nortek purchased in 2014 and the business sold by ITT in 1985, Matthew Nozemack, former vice president at Nortek, testified that "Reznor's operated the same business from the same site for over a hundred years as far as I know." (*Id*., Ex. 2, "Nozemack Tr." at 23:25-24:1; 24:8-9; 25:25-26:2; 39:22-24). The undisputed proof is that they are all the same business.

To effectuate the sale under the 2014 PSA, T&B Corp. would "contribute to [Reznor Manufacturing Company, LLC] certain assets pursuant to the U.S. Contribution Agreement."

10

(SOMF ¶¶ 45-46). Those assets included "all rights, claims and credits, including guarantees, warranties, indemnities, and similar rights, to the extent based upon, arising out of or otherwise related to any U.S. Assumed Liability." (*Id*. ¶¶ 51, 61). Reznor Manufacturing Company, LLC also assumed T&B Corp.'s "U.S. Assumed Liabilities," including "any claim arising out of asbestos-containing products or exposure to asbestos . . . ." (*Id*. ¶¶ 62-64). Accordingly, a plain reading of the pertinent agreements demonstrates that the assets contributed to Reznor Manufacturing Company LLC included all indemnities arising out of T&B Corp.'s asbestos liabilities (*Id*. ¶ 64), meaning that Nortek expressly acquired T&B Corp.'s indemnity rights for asbestos-related liabilities.

Moreover, the agreements establish that Nortek acquired T&B Corp.'s rights and assumed its liabilities as to the Reznor business, and thus meets the definition of a successor. *See Fleet Nat'l Bank*, 192 A.D.3d at 631. That T&B Corp. continued to exist and do other business after the 2014 transaction does not negate the reality that Nortek is a successor to this division of T&B Corp.'s business (*i.e.*, the Reznor business). (SOMF ¶ 68; Def. Reply at 9-10). *See, e.g.*, *Leveraged Innovations, LLC*, 2012 WL 1506524, at *6-7 (concluding that the entity that acquired the entirety of AMEX's "rights and duties" associated with a division of AMEX's business meets the definition of a "successor" to AMEX). The record here reflects that there has been one owner of the Reznor business since 1985 and, in 2014, Nortek succeeded T&B Corp. as that owner. Accordingly, Nortek's purchase of the Reznor business makes Nortek a successor-in-interest to T&B Corp. and, therefore, T&B Corp.'s indemnity rights run to Nortek under both the 1985 APA and 1993 Addendum.

b. <u>Assignee</u>

There is no dispute that Nortek is an assignee of T&B Corp.'s indemnification rights and that Nortek never obtained ITT's consent for the assignment of any rights T&B Corp. held under the 1985 APA or the 1993 Addendum. (SOMF ¶ 73). Thus, the issue is whether a consent requirement existed for assignment of T&B Corp.'s indemnification rights.

Nortek argues that the 1993 Addendum's successors-and-assigns clause (which does not require consent for assignment) is in conflict with the 1985 APA's successors-and-assigns clause (which does require consent for assignment), and that pursuant to Section G of the 1993 Addendum, the latter successors-and-assigns clause controls. (Pl. Br. at 20-24). In effect, Nortek argues that no consent is required under either the 1985 APA or the 1993 Addendum. ITT argues that these clauses are not in conflict with each other and maintains that the 1985 APA consent requirement remains in full force. (Def. Reply at 6-7). The Court need not resolve this issue because, even assuming *arguendo* that 1985 APA consent requirement remained in place, Section D of the 1993 Addendum provides an independent basis for ITT's indemnification obligations. (SOMF ¶¶ 31-32). ITT explicitly agreed in the 1993 Addendum that it was responsible to assume the defense of and pay any judgments rendered in asbestos-related cases arising out of products manufactured by ITT or its predecessors prior to June 28, 1985. (*Id*. ¶ 31). These obligations set forth in the 1993 Addendum indisputably run to assignees *without* consent. Accordingly, to the extent Nortek is an assignee of T&B Corp.'s indemnity rights, Nortek at least has a contractual right to indemnification based on the 1993 Addendum. Whether or not Nortek has a similar right under the 1985 APA is of no consequence here.

In light of the above, the Court finds that ITT is liable for breach of its contractual indemnity obligations to Nortek.[7] Defendant's motion for summary judgment is denied and Plaintiff's cross-motion for partial summary judgment is granted as to liability on its First Claim for Relief.

II.     Second Claim for Relief: Specific Performance / Injunctive Relief

Nortek's Second Claim for Relief seeks "injunctive relief requiring ITT to comply with its obligations and a decree of specific performance compelling ITT to perform its obligations under the [1985] APA and the [1993 Addendum], including its obligation to retain counsel to defend Nortek at ITT's sole expense and to pay any judgment rendered against Nortek with respect to the Covered Claims and any future such asbestos-related litigation." (Am. Compl. ¶ 56). ITT contends that this claim fails because specific performance is not an independent claim for relief under New York law. (Def. Br. at 20). Nortek responds that it is entitled to specific performance as relief for ITT's breach of contract and, in any event, is entitled to a declaratory judgment "that ITT owes Nortek indemnification obligations (either contractual or under the common law) for claims where plaintiffs allege exposure to asbestos in pre-1985 Reznor products." (Pl. Br. at 29-30).

As a threshold matter, "[s]pecific performance is a remedy, and a remedy itself cannot be a cause of action." *Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*, No. 16-CV-03787, 2017 WL 2240235, at *5 (S.D.N.Y. Mar. 29, 2017). Even assuming the Court considers the Second Claim for Relief as a demand for injunctive, declaratory, and specific performance relief, Nortek has failed to establish that it is entitled to specific performance as a remedy. "The decision whether or

---

[7] ITT argues that Nortek's claims that were tendered to ITT more than one year after Nortek was served are barred by the doctrine of laches. (Def. Br. at 18-19). ITT also argues that Nortek is unable to recover for any claims that Nortek failed to tender to ITT. (*Id*. at 20; Def. Reply at 10). These arguments relate to the amount of damages Nortek may be owed and, therefore, the Court need not and does not reach them on this motion that only pertains to liability.

13

not to award specific performance is one that rests in the sound discretion of the trial court." *Grabel v. Diamond On Duane Condominium*, No. 153105/13, 2015 WL 3466938, at *2 (N.Y. Sup. Ct. June 02, 2015). "Generally, the equitable remedy of specific performance is routinely awarded in contract actions involving real property, on the premise that each parcel of real property is unique." *Id*. "[S]pecific performance will not be ordered where money damages 'would be adequate to protect the expectation interest of the injured party.'" *Id*. at *5. Here, Nortek's alleged injury is based on the amounts it has expended defending and resolving asbestos claims for which ITT allegedly owes it indemnity. (SOMF ¶ 100). Monetary damages therefore exist as an adequate remedy at law. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) ("If an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify specific relief."). Thus, the remedy of specific performance is not appropriate under these circumstances.

To the extent Nortek seeks a declaratory judgment, "the law does not recognize a declaratory judgment claim for relief." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *7 (S.D.N.Y. June 30, 2021). This is because "a declaratory judgment is a remedy, not a cause of action." *Abraham v. Town of Huntington*, No. 17-CV-03616, 2018 WL 2304779, at *14 (E.D.N.Y. May 21, 2018); *see also In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("A request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights.").

Even if the Court were to consider the merits of Nortek's Second Claim or request for relief, a declaratory judgment is not necessary here. "The Court's discretionary decision to award declaratory judgment turns on (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment will finalize the controversy and

offer relief from uncertainty." *StandardAero Aviation Holdings, Inc. v. Signature Aviation Ltd.*, No. 22-CV-07515, 2024 WL 125574, at *5 (S.D.N.Y. Jan. 11, 2024) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005)). "Courts in this Circuit routinely dismiss requests for declaratory judgment when the parties' rights will be adjudicated through a breach of contract claim in the same action." *Id.* (quoting *Com. Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14-CV-07483, 2017 WL 3432073, at *17 (E.D.N.Y. Aug. 8, 2017)). Here, Nortek's First and Second Claims for Relief involve the same allegations regarding ITT's alleged indemnification obligations for asbestos-related cases. (Am. Compl. ¶¶ 46-56). A declaratory judgment is therefore not necessary to clarify any uncertainty because ITT's indemnity obligations will be resolved through resolution of Nortek's breach of contract claims.

Likewise, Nortek's request for injunctive relief fails for exactly the same reasons its request for declaratory relief fails. Injunctive relief is not appropriate where the Court has found a breach of contract exists in favor of the Plaintiff.

Accordingly, Defendant's motion for summary judgment is granted and Plaintiff's cross-motion for partial summary judgment is denied as to the Second Claim for Relief. The Second Claim for Relief is dismissed.

### III.   Third Claim for Relief: Implied (Common Law) Indemnification

Nortek's Third Claim for Relief for implied (common law) indemnification is brought in the alternative. (Am. Compl. ¶¶ 57-62). Nortek states in its briefing that "[t]he Court need not reach questions of common law indemnity if it finds that Nortek is entitled to contractual indemnity as a successor and/or assignee of T&B Corp." (Pl. Reply at 10). In light of the Court's conclusion that Nortek is entitled to contractual indemnity, discussed *supra*, and Nortek's concession, Nortek's alternative Third Claim for common law indemnification is dismissed.

Accordingly, Defendant's motion for summary judgment is granted and Plaintiff's cross-motion for partial summary judgment is denied as to the Third Claim for Relief. The Third Claim for Relief is dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED as to the Second and Third Claims for Relief and DENIED as to the First Claim for Relief.

Plaintiff's cross-motion for partial summary judgment is GRANTED as to the First Claim for Relief (as to liability only) and DENIED as to the Second and Third Claims for Relief. Plaintiff's damages flowing from its First Claim for Relief, if any, shall be determined at trial.

The parties shall, by April 11, 2025, file those materials required by Rules 6(A), 6(B), and 6(D) of this Court's Individual Practices.

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Docs. 109, 112, and 113.

**SO ORDERED:**

Dated: White Plains, New York
February 24, 2025

_____
PHILIP M. HALPERN
United States District Judge